1  LAW OFFICES OF CHRISTOPHER K JAFARI
   KIARASH KAY JAFARI  BAR No. 299610
2  CHRISTOPHER K JAFARI BAR No. 219971
   1 PARK PLAZA, SIXTH FLOOR
3  IRVINE, CA 92614
   Telephone:  (949) 852-4454
4  Facsimile:  (949) 852-4453
5  Attorneys for Plaintiff/Cross-Defendant Luke Choi

6              SUPERIOR COURT OF THE STATE OF CALIFORNIA

7          FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

8  LUKE CHOI, an individual;              )   **Case No.: 30-2019-01042953**
                                          )
9              Plaintiff,                 )
                                          )   ***Assigned for All Purposes to Hon. Judge***
10        v.                              )   ***Sheila Fell, Dept. C25***
                                          )
11                                        )   FIRST AMENDED COMPLAINT FOR
   KEENAM PARK, an individual; K&B        )   DAMAGES:
12 EDUCATION GROUP, LLC, a Massachusetts  )
   Limited Liability Company; Eduhup Education )
13 and Technology Group, Inc., a Massachusetts )   1.  FRAUD [Misrepresentation - Civ. Code.
   Corporation; and DOES 1-10, inclusive  )       § 1710(1)]
14                                        )
15             Defendants.                )   2.  FRAUD [False Promise - Civ. Code. §
                                          )       1710(4)]
16                                        )   3.  FRAUD [False Promise - Civ. Code. §
   _____       )       1710(4)]
17                                        )   4.  FRAUD [False Promise - Civ. Code. §
18 LUKE CHOI, an individual;              )       1710(4)]
                                          )   5.  FRAUD [False Promise - Civ. Code. §
19             Plaintiff,                 )       1710(4)]
                                          )   6.  BREACH OF FIDUCIARY DUTY
20        v.                              )   7.  BREACH OF WRITTEN CONTRACT
                                          )   8.  BREACH OF WRITTEN CONTRACT
21                                        )   9.  CONVERSION
   KEENAM PARK and DOES 1-10, inclusive   )   10. ACCOUNTING
22                                        )   11. BREACH OF WRITTEN CONTRACT
23             Defendants.                )       (PROMISSORY NOTE)
                                          )   12. ESTOPPEL
24                                        )   13. DECLARATORY RELIEF
                                          )   14. COMMON COUNT: MONEY HAD
25                                        )       AND RECEIVED
                                          )
26                                        )
                                          )
27                                        )
                                          )
28                                        )
   _____       )

                              **1**
                  FIRST AMENDED COMPLAINT

Plaintiff Luke Choi alleges in this Complaint ("Complaint") as follows:

## GENERAL ALLEGATIONS

1. At all times material to this Complaint, Plaintiff Luke Choi (hereinafter "Plaintiff") is an individual, residing in the County of Orange, State of California.

2. At all times material to this Complaint, Defendant Keenam Park ("Park") is an individual who conducts business in the County of Orange, State of California.

3. At all times material to this Complaint, Defendant K&B Education Group, LLC ("KB") is a Massachusetts Limited Liability Company that has engaged in the transactions described herein within the County of Orange, State of California.

4. At all times material to this Complaint, Defendant Eduhup Education and Technology Group, Inc. ("Eduhup") is a Massachusetts Corporation that has engaged in the transactions described herein within the County of Orange, State of California. Eduhup was formerly known as "Eduhub Education and Technology Group, Inc" before changing its name on August 16, 2018.

5. Plaintiff is ignorant of the true names or capacities whether individual, corporate, associate or otherwise, of defendants sued herein as DOES 1 to 10, inclusive, and therefore sues these defendants by such fictitious names. When the true names and capacities of these defendants become known, Plaintiff will amend this Complaint to allege their true names and capacities and will pray leave to amend with the proper allegations made against said defendants.

6. Venue is proper in the Central Justice courthouse in the California Superior Court, County of Orange, as the acts alleged in this Complaint occurred in Orange County, California, Defendants conduct business and/or transactions within said county and jurisdiction, the parties assented to jurisdiction within the state of California, as the

subject instrument is entitled, "California Promissory and Installment Note," and the aforementioned written and verbal communications and/or transactions were made to Plaintiff while in the state of California, County of Orange.

7. The California Superior Court has jurisdiction over this action pursuant to Article VI Section 10 of the California Constitution, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts." The obligation sued on herein was incurred in or is payable in the County of Orange, State of California.

8. Plaintiff further alleges on information and belief that there exists, and at all times mentioned herein there existed, a unity of interest and ownership between Park on the one hand, and KB and Eduhup on the other hand, such that any individuality and separateness between Park on the one hand and KB and Eduhup on the other hand have ceased to exist, and that KB and Eduhup are the alter egos of Park, who exercises complete dominion and control over said corporate entity and who uses these corporate entities as a mere shell, instrumentality or conduit to conduct Park's business as an individual and as a shield against personal liability. By way of example but not limitation, and upon information and belief, funds for KB, Eduhup, and Park weed, and KB and Eduhup were significantly undercapitalized to operate as an entity as Park took said funds from KB and Eduhup for his own personal gain and benefit.

9. Adherence to the fiction of the separate existence of KB and Eduhup as distinct from Park would permit abuse of corporate privilege and would produce an inequitable result in that it would allow Park to avoid personal liability for his conduct in participating in an organized plan, scheme and design to engage in the conduct alleged herein, all to the pecuniary benefit of Park. As used herein, "Park" refers to not only Keenam Park

individiually, but also in his representative capacity of his alter-ego entities KB and Eduhup.

10. Plaintiff is informed and believes, and on that basis alleges that each of the defendants herein, including the fictitious defendants, was the agent, employee, servant, partner or joint venturer of each of the other defendants, and in performing each of the acts herein alleged, each was acting within the course and scope of said relationships with the knowledge, consent and acquiescence of each of the other defendants.

11. In or about November of 2015, Park, who at the time was Plaintiff's longtime friend since 1980, contacted Plaintiff by phone and verbally informed Plaintiff that KB, a business that provides education services for foreign students, came across some "minor and temporary" issues with cash flow and just needed an immediate investment in order to make the business succeed. Park specifically explained to Plaintiff that KB was capable of generating approximately $9,000.00 to $10,000.00 in net profits per student per year and that an investment into this business would permit KB to realize its true potential for profits.

12. In order to further induce Plaintiff's reliance on his representations, on November 2, 2015, Park sent to Plaintiff by e-mail his personal tax returns for 2013 and 2014, along with documents that appeared to be KB's balance sheets for 2013 through 2015. Pursuant to the written documents provided by him, Park represented to Plaintiff that KB's net income was $373,461 in 2013; $1,267,578 in 2014; and $755,559 from January 1 to June 30, 2015.

13. After sending the aforementioned e-mails, Park subsequently represented to Plaintiff that because the company needed funding immediately, if Plaintiff wire transfers to Park an initial investment of $140,000.00, Plaintiff would become a ten percent (10%) owner of

KB along with 2% ownership of music school business called JZ Music School/Bachon Jazz Academy upon the receipt of further investment money as set forth in a subsequent written partnership agreement that Park would create.

14. At the time Park made the aforementioned representations, he knew that they were false, and in fact the (1) the "minor" issues concerning KB's cash flow was because Park had caused the business to nearly go bankrupt after he had taken over $3,000,000.00 out of it and invested it into risky stock options that failed and (2) Park did not own JZ Music School and intended to use some of the money that Plaintiff would provide him to purchase JZ Music School without giving him any ownership of this business. At this time, Park had also known that he owed a former partner/co-founder of KB $2,000,000.00, and that Park intended to use the money he would receive from Plaintiff for his own personal gain and benefit, including (1) diverting Plaintiff's money into his other businesses which Plaintiff is not an owner of, and (2) paying off the former partner and co-founder the money he owed.

15. In justifiable reliance of the aforementioned written and verbal representations, on November 3, 2015, Plaintiff wired to Park $140,000.00 and an additional $380,000.00 on November 20, 2015.

16. In or about November 21, 2015, Park presented to Plaintiff a document entitled "Investment, CFO Employment, and Partnership Agreement" which confirmed the aforementioned representations by Park ("Partnership Agreement").

17. In justifiable reliance of Park's aforementioned written and verbal representations, on November 11, 2015 Plaintiff was induced into signing the Partnership Agreement which called for the following pertinent provisions:

    1.   Company agrees to issue and sell 10 Percent of Company's Class A Shares to Luke Choi, free and clear of any liens, claims, charges

**5**

FIRST AMENDED COMPLAINT

and encumbrances whatsoever, and Luke Choi agrees to purchase price of $2,000,000.  The payment date for the first $520,000 should be made by November 30th and another $980,000.00 should be made as soon as Choi's home line of credit is funded within December month or sooner. Luke Choi agrees to put additional $500,000 by September 1, 2017 to make it total $2,000,000 for 10 percent of Company.

2. Park and Choi will come up with CFO's role and responsibility together.  Luke Choi, as Company CFO, will start full employment on September 1, 2016 at $20,000 per month base salary.  Luke Choi will start as Company CFO Consultant on January 1, 2016 at $10,000 per month until August 31, 2016.

3. Luke Choi will manage all of the Company's investment portfolio of minimum $2,000,000 per year average starting March 1, 2016. As yearly bonus Luke Choi will get 35 percent of net profit and Keenam Park will get 65 percent of net profit from the Company's investment portfolio.

4. Keenam Park and Luke Choi agrees to invest on any future insurance-Company at 30 percent partnership for Luke Choi and 70 percent partnership for Keenam Park.

5. Luke Choi, as Company CFO, have option to bu 1 percent of Company per year at $200,000.00 for next 5 years with additional 1 percent bonus each year starting December 1, 2016 (1 percent as CFO bonus and 1 percent for $200,000 purchase).  If Choi does not exercise his option to buy 1 percent of Company each year Choi will only get 1 percent bonus of Company each year for 5 years. Any tax gain is responsibility of each party.

6. Keenam Park agrees to give 2 percentage ownership of JZ Music School (Bachon Jazz Academy) to Luke Choi as CFO bonus.

18. Attached and incorporated herein as **Exhibit "A"** is a true and correct copy of the Partnership Agreement which Park signed on November 25, 2015.

19. Pursuant to the Partnership Agreement, Plaintiff subsequently paid to Park the following funds in addition to the $520,000 that was previously provided:

November 27, 2015: $350,000.00 (One transfer for $300,000 and another for $50,000)

December 11, 2015: $250,000.00

December 29, 2015: $200,000.00

March 15, 2016: $60,000

April 1, 2016  - $20,000

May 2, 2016 – $20,000

June 1, 2016 - $20,000

August 1, 2016 - $20,000

October 27, 2016 - $50,000

January 2017: $10,000

March 2017: $20,000

April 2017: $20,000

May 13 2017: $20,000

20. In or about December of 2015, Plaintiff verbally informed Park during a phone call that his home line of credit application was delayed, but that payments would be forthcoming in the next several months. Park subsequently agreed to receive the additional payments after December, provided that they would continue to be received.

21. At this time, Plaintiff performed all of his obligations called for in the Partnership Agreement by continuing to make payments towards his investment as described above, while remotely working with Park in considering various investment opportunities for the company.  Park had never made any complaints about Plaintiff's performance of his payment and service obligations.

22. In or about February of 2016, Park revealed to Plaintiff through a phone call that the shares he was purchasing were in fact n*ot* clear of any liens, claims, charges and/or

FIRST AMENDED COMPLAINT

encumbrances, as Park's former partner and founder of KB was owed $2,000,000.00 and Park was utilizing the funds that Plaintiff provided to pay off this claim, which was for the sole benefit of Park.

23. Plaintiff subsequently informed Park that he must return the money back to KB, to which Park informed Plaintiff that he would. During that same call, Park informed Plaintiff that while he seeks to return the money, and since KB's capital funds available was limited due to Park's diversion of money that Plaintiff provided, he would agree to modify the agreement by making Plaintiff a 10% owner of KB while Plaintiff's remaining obligations would be limited to providing advice to Park about various business deals that KB would engage in. Plaintiff agreed to the aforementioned modification of the Partnership Agreement.

24. This modification of Park and Plaintiff's Partnership Agreement was confirmed in writing through various written communications from Park to Plaintiff. On February 7, 2017, Park represented to Plaintiff in writing, "***With new platform being rolled out, I do not want to sell* [KB] *anymore. In 2-3 years, your annual dividend could be over a million.***"

25. Plaintiff continued to perform all of his payment and service obligations without any complaints by Park.

26. In or about May of 2017, Park verbally informed Plaintiff that he had induced Plaintiff into investing into KB because Park had taken over $3,000,000 out from the business to invest into stock options that ultimately failed. Plaintiff subsequently demanded a third party audit of the company in order to determine to what extent Park had taken money out.  Plaintiff also informed Park that he would never have invested into KB had he known that over $3,000,000 of this company's assets was diverted.  Park subsequently

offered that instead of engaging in a third party audit of the company, he would return the sum of $3,000,000.00 to the company in addition to his prior promise to return $2,000,000.00 which he had given to his former partner and founder of KB, and, in order to resolve this issue, he would make Plaintiff a 15% owner of KB. This agreement was confirmed in writing through a Kakao message from Park to Plaintiff in which he stated, "**,[I]*t was not that difficult decision to give you 10% and additional 5% for free because it was going to be good for both of us*.**" Park had also confirmed in this same communication that he had cheated Plaintiff by writing, "***I feel like I am being treated as if I cheated you <u>intentionally</u> and it is really bothering me***" [emph. added].

27. As set forth above, Plaintiff continued to justifiably rely on his partner and friend Park's representations by continuing to pay money towards his investment into KB to Park. By May 13, 2017, Plaintiff complied with his financial obligations by paying the total sum of $1,580,000.00.

28. By January of 2018, Park failed to pay back any of the money he promised to return to KB including the $2,000,000 he diverted to pay off his prior partner, along with the $3,000,000.00 he diverted from the company in investing into risky stock options that failed. In reality, Park had diverted the money that Plaintiff provided to him into other businesses which Plaintiff did not have an ownership interest of, including Eduhup.

29. During that time, Plaintiff and Park had a phone call in which Park promised to Plaintiff that he would resolve these ongoing issues by selling KB to a third party buyer while transferring the sale proceeds to Eduhup, which would be co-owned by Plaintiff and Park. This promise by Park was confirmed in writing through a subsequent Kakaochat message dated January 16, 2018 from Park to Plaintiff in which Park wrote, "***Our exit***

***plan is to sell EduBoston [referring to KB] at the highest valuation and transition into EduHub [referring to Eduhup]."***

30. At the time Park made this promise, he knew that he was not going to sell KB to a third party buyer before subsequently transferring the sale proceeds to Eduhup which would be co-owned by him and Plaintiff in the same manner that KB was owned. Rather, Park made this false promise in order to induce Plaintiff into giving him more time to resolve the aforementioned issues concerning Plaintiff's investment.

31. By July of 2018, Park failed to (1) sell KB to a third party buyer and (2) pay back any of the money he promised to return to KB. During this time, Plaintiff and Park had a phone call in which Park verbally represented to Plaintiff that he would agree to buy-back Plaintiff's 15% ownership of KB in the amount of $3,000,000.00 (representing a $20,000,000.00 total valuation of KB) in order to resolve this dispute. When Plaintiff indicated that he would agree to this offer so long as this amount is paid immediately, Park informed Plaintiff that there was no way he could pay this money back as a lump sum, but instead would pay it off through a promissory note in addition to post-dated checks that he would sign and provide to Plaintiff.

32. Park subsequently instructed Plaintiff during this phone call that in order to ensure that Park's wife Amy does not find out about his diversion of funds from KB, that his agreement to pay Plaintiff $3,000,000.00 should be reduced into a "personal loan," despite the fact that this repayment did not arise from a money loan that Plaintiff provided to Park.

33. Plaintiff subsequently verbally accepted this offer on August 2, 2018, provided that Park signs a promissory note reflecting his promise to pay back to him $3,000,000.00.

34. The aforementioned agreement was confirmed in writing through a Kakao chat message between Plaintiff and Park in which Park specifically wrote on August 2, 2018, "***If you want my commitment to pay you back, I will send you post-dated checks***."

35. On August 3, 2018, Park sent two e-mails to Plaintiff and his wife Linda along with his proposed "promissory note" stating:

> **I simplified the promissory note to make it easier for us to understand. Please review and give me your response.**
> …
>
> It is unfortunate and disappointing that our investment did not work out the way we expected. **But I am still very optimistic with our new platform [referring to Eduhup] that we will be very successful in a short few years**.
>
> **In the meantime, I am working on this agreement and I want you to know I have not forgotten.** I feel that some of the conditions on this is something that I cannot accept as it is and I will have to make a counter-proposal. But I will try to do my best to come up with some solution to make sure that it serves both of us without feeling unfair.
>
> Thank you for your patience. [emph. added]

36. Attached and incorporated herein as **Exhibit "B"** is a true and correct copy of the e-mails from Park along with his proposed "promissory note."

37. On August 4, 2018, Park confirmed his agreement to pay to Plaintiff $3,000,000.00 through post-dated checks by writing to Plaintiff and Linda by e-mail, "***I can post date checks and send them to you. But the first payment must start in January***."

38. At the time Park made the aforementioned representations between August 2 through 4 2018, he knew that he did not owe Plaintiff any money for a so-called "personal loan," and that instead he had agreed to pay Plaintiff the sum of $3,000,000.00 through a

payment schedule to buy-out Plaintiff's 15% ownership of KB under the false guise of a promissory note with interest.

39. On or about August 6, 2018, Park subsequently signed the note he had prepared and sent it to Plaintiff along with several post-dated checks. Attached and incorporated herein as **Exhibit "C"** is a true and correct copy of the note.

40. On September 14, 2018, Park continued to falsely promise and assure Plaintiff that the $3,000,000 he promised to pay him in exchange for his 15% ownership by writing in a Kakao message, "***I have expressed enough commitment to cater your needs.. and I hope you guys will trust my commitment***."

41. By October 31, 2018, Park had only paid $100,000 of the $3,000,000.00 he promised to pay.

42. In Kakao message dated October 31, 2018, Park wrote to Plaintiff:

> I am trying my best, Luke. **You have to trust me that you will get paid what I promised**. [emph. added]

43. At the time Park made these representations, he knew that they were false and that he was not going to pay Plaintiff the $3,000,000.00 he promised to pay.

44. On January of 2019, having failed to make any additional payments beyond $350,000.00, Park called Plaintiff and asked to modify his agreement to buy back his 15% ownership of KB for $3,000,000 by making monthly payments of $100,000 over the course of approximately 2 years. Plaintiff subsequently agreed to this request. This agreement to modify the buy-back of Plaintiff's 15% ownership of KB was memorialized in writing through the following Kakao message that Park sent to Plaintiff on January 20, 2019:

**I am willing to pay you what was on the promissory note but with some condition. I need at least 2 years. $100K per month.** There is no way I can take $3 million out of operation over 12 months without compromising the operation. You need to help me to help you. This was the message is sent you from the beginning of this mess. Even taking $100k out on a month basis from the business which is not growing is going to put serious chock hold. But I am willing to work hard to make it happen. You have to give in that much to make it work. … **I need one more year. That is least you can do as the best friend. And you verbally agreed already.** [emph. added]

45. As with his prior representations, at the time Park made these representations in order to induce Plaintiff's justifiable reliance in accepting these new terms, he knew that they were false and that he would not even make $100,000.00 in monthly payments over the course of approximately two years.

46. On January 30, 2019, Plaintiff wrote to Park in a Kakao message, "*Please make sure to wire $100k by today or tomorrow*."

47. Park subsequently refused to send the payment, let alone any other payment none whatsoever.

**FIRST CAUSE OF ACTION**

**FRAUD [Intentional Misrepresentation of Fact (Civil Code § 1710(1))]**

**By Plaintiff against All Named and Does Defendants**

48. Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 47, above.

49. In or about November of 2015, Park, who at the time was Plaintiff's longtime friend since 1980, contacted Plaintiff by phone and verbally represented to Plaintiff that KB

**13**

FIRST AMENDED COMPLAINT

came across some "minor and temporary" issues with cash flow and just needed an immediate investment in order to make the business succeed.

50. In order to further induce Plaintiff's reliance on his representations, on November 2, 2015, Park sent to Plaintiff by e-mail his personal tax returns for 2013 and 2014, along with documents that appeared to be KB's balance sheets for 2013 through 2015. Pursuant to the written documents provided by him, Park represented to Plaintiff that KB's net income was $373,461 in 2013; $1,267,578 in 2014; and $755,559 from January 1 to June 30, 2015.

51. After sending the aforementioned e-mails, Park subsequently represented to Plaintiff that because the company needed funding immediately, if Plaintiff wire transfers to Park an initial investment of $140,000.00, Plaintiff would become a ten percent (10%) owner of KB along with 2% ownership of music school business called JZ Music School/Bachon Jazz Academy upon the receipt of further investment money as set forth in a subsequent written partnership agreement that Park would create.

52. At the time Park made the aforementioned representations, he knew that they were false, and in fact (1) the "minor" issues concerning KB's cash flow was because Park had caused the business to nearly go bankrupt after he had taken over $3,000,000.00 out of it and invested it into risky stock options that failed and intended to utilize the money that Plaintiff would invest to recover from this significant diversion of KB's funds, (2) was going to utilize some of the funds that Plaintiff provided towards the $1,000,000.00 purchase of Bachon Jazz Academy without giving Plaintiff any ownership of this business, and (3) diverted money that belonged to KB into various other businesses that Plaintiff had no ownership of.

**14**

FIRST AMENDED COMPLAINT

53.  In justifiable reliance of the aforementioned written and verbal representations, from November of 2015 through May of 2017, Plaintiff was induced into liquidating his investment portfolio before sending to Park the total sum of $1,580,000.00.

54. In being induced into providing Park $1,580,000, Plaintiff had to forego other investment opportunities that would have generated a significant profit, including but not limited to, stocks that Plaintiff sold which had significantly increased in value since their sale by Plaintiff in order to invest into KB. Upon information and belief, in addition to the $1,580,000 that Plaintiff invested into KB, Plaintiff had lost at least $1,500,000.00 in profits that he could have otherwise made but for Park's misrepresentations which proximately caused Plaintiff's inducement as described above.

55. As a proximate result of Park's fraud and deceit and the facts herein alleged, Plaintiff has incurred damages in an amount according to proof at trial, but not less than $2,650,000.00.

56. In doing the acts herein alleged, Park acted with oppression, fraud, and malice, and Plaintiff is entitled to exemplary and punitive damages in an amount according to proof at the time of trial.

**SECOND CAUSE OF ACTION**
**FRAUD [False Promise (Civil Code § 1710(4)]**
**By Plaintiff against All Named and Does Defendants**

57. Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 56, above.

58. On or about November of 2015, Park verbally promised to Plaintiff that, among other things, he would give to Plaintiff 2% ownership of a business school called JZ Music School/Bachon Jazz Academy (hereinafter "JZ") upon the receipt of investment money that would be used towards investing into KB.  The aforementioned promise was

**15**
FIRST AMENDED COMPLAINT

confirmed in writing through the Partnership Agreement that Park presented to Plaintiff on November 21, 2015.

59. At the time Park made this promise, he knew he had not acquired Bachon Jazz Academy and intended to use part of the money that Plaintiff would provide him towards the $1,000,000 purchase of Bachon Jazz Academy while having no intention whatsoever of making Plaintiff a 2% owner of JZ.

60. In justifiable reliance of the aforementioned written and verbal promises, from November of 2015 through May of 2017, Plaintiff was induced into liquidating his investment portfolio before sending to Park the total sum of $1,580,000.00. Plaintiff had no reason to believe that the aforementioned promise was false and justifiably relied on Park's representations as his partner and long-time friend.

61. In being induced into providing Park $1,580,000, Plaintiff had to forego other investment opportunities that would have generated a significant profit, including but not limited to, stocks that Plaintiff sold which had significantly increased in value since their sale by Plaintiff in order to invest into KB. Upon information and belief, in addition to the $1,580,000 that Plaintiff invested into KB, Plaintiff had lost at least $1,500,000.00 in profits that he could have otherwise made but for Park's false promises which proximately caused Plaintiff's inducement and damages as described above.

62. As a proximate result of Park's fraud and deceit and the facts herein alleged, Plaintiff has incurred damages in an amount according to proof at trial, but not less than $2,650,000.00.

63. In doing the acts herein alleged, Park acted with oppression, fraud, and malice, and Plaintiff is entitled to exemplary and punitive damages in an amount according to proof at the time of trial.

FIRST AMENDED COMPLAINT

### THIRD CAUSE OF ACTION

### FRAUD [False Promise (Civil Code § 1710(4)]

### By Plaintiff against All Named and Does Defendants

64. Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 63, above.

65. In or about January of 2018, Park failed to pay back any of the money he promised to return to KB including the $2,000,000 he diverted to pay off his prior partner, along with the $3,000,000.00 he diverted from the company in investing into risky stock options that failed.

66. During that time, Plaintiff and Park had a phone call in which Park verbally promised to Plaintiff that he would resolve these ongoing issues by selling KB to a third party buyer while transferring the sale proceeds to Eduhup, which would be co-owned by Plaintiff and Park.  Park's promise was confirmed in writing through a subsequent Kakaochat message dated January 16, 2018 from Park to Plaintiff in which Park wrote, "***Our exit plan is to sell EduBoston* [referring to Eduhup]** *at the highest valuation and transition into EduHub*."

67. At the time Park made this promise, he knew that he was not going to sell KB to a third party buyer before subsequently transferring the sale proceeds to Eduhup which would be co-owned by him and Plaintiff in the same manner that KB was owned. Rather, Park made this false promise in order to induce Plaintiff into giving him more time to resolve their ongoing dispute as described above while continuing to divert funds that Plaintiff invested into businesses that Plaintiff had no ownership of, including Eduhup.

68. Plaintiff justifiably relied on the aforementioned promise by Park as the two were partners and long-time friends.

**17**

FIRST AMENDED COMPLAINT

69. As a proximate result of Park's fraud as alleged herein, Plaintiff has incurred damages in an amount according to proof at trial, but not less than $2,650,000.00.

70. In doing the acts herein alleged, Park acted with oppression, fraud, and malice, and Plaintiff is entitled to exemplary and punitive damages in an amount according to proof at the time of trial.

### FOURTH CAUSE OF ACTION
### FRAUD [False Promise (Civil Code § 1710(4)]
### By Plaintiff against All Named and Does Defendants

71. Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 70, above.

72. In or about July of 2018, Park verbally promised to Plaintiff through a phone call that in order to resolve their disputes concerning Park's diversion of money from KB, he would buy back Plaintiff's 15% ownership of KB for the sum of $3,000,000 through a payment plan.

73. In order to induce Plaintiff's reliance on said promise, Park subsequently instructed Plaintiff during this phone call that in order to ensure that Park's wife Amy does not find out about his diversion of funds from KB, that his agreement to pay Plaintiff $3,000,000.00 should be reduced into a "personal loan" with post-dated checks, despite the fact that this repayment did not arise from a money loan that Plaintiff provided to Park.

74. Despite not having any contractual duty to accept this offer, in justifiably reliance of the promise made by his long-time friend and partner, Plaintiff subsequently was induced into verbally accepting this offer on August 2, 2018, provided that Park signs a promissory note reflecting his promise to pay back to him $3,000,000.00.

FIRST AMENDED COMPLAINT

75. The aforementioned promise by Park to pay Plaintiff was confirmed in writing through a Kakao chat message between Plaintiff and Park in which Park specifically wrote on August 2, 2018, "***If you want my commitment to pay you back, I will send you post-dated checks***."

76. On August 4, 2018, Park confirmed his promise to pay to Plaintiff $3,000,000.00 through post-dated checks by writing to Plaintiff and Linda by e-mail, "***I can post date checks and send them to you. But the first payment must start in January***."

77. At the time Park made the aforementioned representations between August 2 through 4 2018, he knew that he did not owe Plaintiff any money for a so-called "personal loan," and that instead he had agreed to pay Plaintiff the sum of $3,000,000.00 through a payment schedule to buy-out Plaintiff's 15% ownership of KB under the false guise of a promissory note with interest.

78. On or about August 6, 2018, Park subsequently signed the note that was prepared at his specific instruction and sent it to Plaintiff (**Exhibit "C"**) along with several post-dated checks.

79. At the time this note was prepared and signed, Park knew that he was not going to pay Plaintiff $3,000,000.00 and, should Plaintiff seek to enforce the note, Park would claim that the interest on this so-called "personal loan" was excessive and/or usury, thereby presenting himself with an opportunity to excuse himself from paying the money he agreed to pay for Plaintiff's 15% ownership of KB.

80. On September 14, 2018, Park continued to falsely promise and assure Plaintiff that the $3,000,000 he promised to pay him in exchange for his 15% ownership by writing in a Kakao message, "***I have expressed enough commitment to cater your needs.. and I hope you guys will trust my commitment***."

---

**19**

FIRST AMENDED COMPLAINT

81. By October 31, 2018, Park had only paid $100,000 of the $3,000,000.00 he promised to pay.

82. In Kakao message dated October 31, 2018, Park wrote to Plaintiff:

> I am trying my best, Luke. **You have to trust me that you will get paid what I promised**. [emph. added]

83. At the time Park made these representations, he knew that they were false and that he was not going to pay Plaintiff the $3,000,000.00 he promised to pay.

84. Once again, at the time Park made these promises, he knew that they were false and that he was not going to pay Plaintiff the $3,000,000.00 he promised to pay and made the aforementioned promises in order to induce Plaintiff's justifiable reliance of trusting his long-time friend and partner into accepting these promises as true while Park proceeded to divert money that was to be used to pay Plaintiff to himself and/or his various businesses that Plaintiff did not own, including Eduhup.

85. As a proximate result of Park's fraud as alleged herein, Plaintiff has incurred damages in an amount according to proof at trial, but not less than $2,650,000.00.

86. In doing the acts herein alleged, Park acted with oppression, fraud, and malice, and Plaintiff is entitled to exemplary and punitive damages in an amount according to proof at the time of trial.

### FIFTH CAUSE OF ACTION
### FRAUD [False Promise (Civil Code § 1710(4)]
### By Plaintiff against All Named and Does Defendants

87. Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 86, above.

88. On January of 2019, having failed to make any additional payments since October of 2018, Park called Plaintiff and promised to pay Plaintiff the money he owed if Plaintiff

FIRST AMENDED COMPLAINT

would agree to modify Park's agreement to buy back Plaintiff's 15% ownership of KB

for $3,000,000 by making monthly payments of $100,000 over the course of

approximately 2 years. Plaintiff, who simply wanted to receive the money that his long-

time friend and partner promised to pay him, justifiably relied on the aforementioned

promise and was induced into subsequently verbally agreeing to this request. Park's

promise to pay per the new terms he wanted and subsequent agreement to modify the

buy-back of Plaintiff's 15% ownership of KB was memorialized in writing through the

following Kakao message that Park sent to Plaintiff on January 20, 2019:

> **I am willing to pay you what was on the promissory note but**
> **with some condition. I need at least 2 years. $100K per month.**
> There is no way I can take $3 million out of operation over 12
> months without compromising the operation. You need to help me
> to help you. This was the message is sent you from the beginning
> of this mess. Even taking $100k out on a month basis from the
> business which is not growing is going to put serious chock hold.
> But I am willing to work hard to make it happen. You have to give
> in that much to make it work. … **I need one more year. That is**
> **least you can do as the best friend. And you verbally agreed**
> **already.** [emph. added]

89. As with his prior representations, at the time Park made these representations in order to

induce Plaintiff's justifiable reliance in accepting these new terms, he knew that they

were false and that he would not even make $100,000.00 in monthly payments over the

course of approximately two years.

90. On January 30, 2019, Plaintiff wrote to Park in a Kakao message, "*Please make sure to*

*wire $100k by today or tomorrow.*"

91. Park subsequently refused to send the payment, let alone any other payment none whatsoever.

92. As a proximate result of Park's fraud as alleged herein, Plaintiff has incurred damages in an amount according to proof at trial, but not less than $2,650,000.00.

93. In doing the acts herein alleged, Park acted with oppression, fraud, and malice, and Plaintiff is entitled to exemplary and punitive damages in an amount according to proof at the time of trial.

## SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### By Plaintiff against All Named and Does Defendants

94. Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 93, above.

95. Since the formation of their partnership in November of 2015, Park at all relevant times owed the highest fiduciary duty of due care and loyalty to Plaintiff as his trusted partner.

96. Park had a fiduciary duty to protect the interests of the partnership, and not to commit any acts which would harm the partnership he formed with Plaintiff.

97. In doing the acts alleged herein, Park breached his fiduciary duty of undivided loyalty and due care by engaging in the misrepresentation, false promises, conversion, and embezzlement, described herein.

98. Plaintiff is informed and believes, and on that basis alleges that Park has breached his duty by, among other things, improperly using money that Plaintiff provided Park for Park's own personal gain and benefit, including the diversion of money to companies which Plaintiff was not an owner of, including Eduhup.

99. As a result of his breaches of his fiduciary duty, Park has reaped and will continue to benefit from the partnership for his own personal gain but to Plaintiff's detriment.

FIRST AMENDED COMPLAINT

100.     As a proximate result of Park's conduct, Plaintiff has been injured in an amount of not less than $2,650,000.00 or according to proof at trial.

101.     Park's conduct in breaching his fiduciary duty was intentional, oppressive, fraudulent and malicious as to Plaintiff and was engaged in for his own personal gain at Plaintiff's expense and Plaintiff is entitled to an award of punitive damages against Park according to proof at trial.

### SEVENTH CAUSE OF ACTION
### BREACH OF WRITTEN CONTRACT
### By Plaintiff against All Named and Does Defendants

102.     Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 101, above.

103.     On or about November of 2015, Plaintiff and Park entered the Partnership Agreement which was modified at various times as set forth above.

104.     Among other things, the agreement called for Park to make Plaintiff a 15% owner of KB and a 2% owner of the music school JZ in exchange for Plaintiff's services and investment.

105.     Plaintiff has performed his financial and service obligations pursuant to the agreement to the extent that such performance was not excused and/or modified as a result of Park's conduct as described above.

106.     As set forth above, Park has breached the agreement by, among other things, claiming that Plaintiff is not a 15% owner of KB despite stating in writing to Plaintiff that "[i]*t was not that difficult decision to give you 10% and additional 5% for free because it was going to be good for both of us*" and also claiming that Plaintiff is not a 2% owner of JZ.

107.     As a result of Defendant's breach, Plaintiff has been damaged in the sum of not less than $2,650,000.00 with interest accruing at the legal rate of ten percent (10%) per annum from the initial breach.

**EIGHTH CAUSE OF ACTION**

**BREACH OF WRITTEN CONTRACT**

**By Plaintiff against All Named and Does Defendants**

108.     Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 107, above.

109.     In or about July of 2018, Park and Plaintiff entered into an agreement in which Park would buy-back Plaintiff's 15% ownership of KB in exchange for $3,000,000.00 that would be paid through monthly payments, in addition to a 5% added onto any amount that would be paid late. Said agreement was confirmed in writing and modified at various times in writing through multiple written communications by Park as set forth above.

110.     Plaintiff has performed his obligations under this agreement by agreeing to accept the sum of $3,000,000.00 in exchange for his 15% ownership of KB.

111.     As set forth above, Park has breached the agreement by, among other things, (1) claiming that Plaintiff is not a 15% owner of KB despite stating in writing to Plaintiff that "[i]*t was not that difficult decision to give you 10% and additional 5% for free because it was going to be good for both of us,*" (2) claiming that Plaintiff is not a 2% owner of JZ, and (3) besides paying only $350,000 to Plaintiff. refusing to pay any additional amount whatsoever.

112.     As a result of Defendant's breach, Plaintiff has been damaged in the sum of not less than $2,650,000.00 with interest accruing at the legal rate of ten percent (10%) per annum from the initial breach.

**24**

FIRST AMENDED COMPLAINT

## NINTH CAUSE OF ACTION

## CONVERSION

### By Plaintiff against All Named and Does Defendants

113.     Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 112, above.

114.     At all relevant times alleged herein, Plaintiff was the rightful owner of the sum of $1,580,000.00 ("Converted Property").

115.     Upon information and belief, Park took the Converted Property without Plaintiff's knowledge or consent for his own personal gain and benefit, including diverting said Converted Property into businesses that Park owned but Plaintiff did not.

116.     Upon information and belief, there may have been other individuals or entities involved in the conversion of the Converted Property, the identities of which have not yet been determined.  Once ascertained, Plaintiff will seek leave of court to amend the complaint.

117.     Between the time of Park's conversion of the Converted Property for their own dominion and/or use, and the filing of this action, Plaintiff spent time and money in pursuit of the Converted Property, all to Plaintiff's further damage, in an amount according to proof.

118.     In doing the acts herein alleged, Park acted with oppression, fraud, and malice, and said conduct is despicable, causing Plaintiff to be entitled to an award of punitive damages according to proof.

119.     Due to the wrongdoing of Park, all of the above-named defendants are in possession and control of the Converted Property. Plaintiff is informed and believes that the Converted Property which rightfully belongs to Plaintiff was improperly retained by all named defendants for their own use and benefit.

FIRST AMENDED COMPLAINT

120.     As a result of the wrongful conduct alleged herein, Park and his alter-ego companies (including all named defendants) are actually holding the Converted Property in constructive trust for Plaintiff.  This constructive trust also extends to the proceeds generated by Park from the use of said Converted Property.

121.     Pursuant to the facts and circumstances alleged herein, the Converted Property wrongfully obtained by Park should also be deemed held in constructive trust for the benefit of Plaintiff.

**TENTH CAUSE OF ACTION**

**ACCOUNTING**

**By Plaintiff against All Named and Does Defendants**

122.     Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 121, above.

123.     Plaintiff has not received a true and accurate accounting from defendants of the money and assets which defendants obtained by and through the facts and circumstances referenced above.

124.     Without a true and accurate accounting from defendants, Plaintiff cannot determine the exact amount of damages to which Plaintiff is entitled.  The amount of money and other assets due from defendants to Plaintiff is unknown to Plaintiff, but is believed to be valued at not less than $3,000,000.00, and cannot be ascertained without an accounting of the Converted Property, in addition to profits defendants generated therefrom, which are in the possession of the defendants and/or their agents.

125.     Pursuant to the facts and circumstances alleged herein, there is due a balance to Plaintiff from defendants, which Plaintiff is informed and believes requires an accounting to be ascertained.

FIRST AMENDED COMPLAINT

### ELEVENTH CAUSE OF ACTION
### ESTOPPEL
### By Plaintiff against Park

126.     Plaintiff incorporates herein by reference each of the allegations set forth in

paragraphs 1 through 125, above.

127.     To the extent that Park claims that the so-called interest on the "personal loan" is

usurious, Park should be estopped from asserting that the interest on the note is usurous

(whether as an affirmative defense or as an independent cause of action) in light of (1) the

fraudulent misrepresentations and inducements towards the creation of the promissory

note as attached herewith as **Exhibit "C" and (2) in light of the fact that the so-called

note was not based upon the repayment for money loaned or the forbearance of

money**.

128.     The interests of justice require that Park pay to Plaintiff the full amount of the

$2,650,000.00 that remains due to be owed in exchange for Plaintiff's 15% ownership of

KB as promised. (See, e.g., *Buck v. Dahlgren* (1972) 23 Cal.App.3d 779, holding "[I]n

light of the borrower's fraudulent representations and inducements, he was estopped from

asserting usury.")

### TWELFTH CAUSE OF ACTION
### BREACH OF WRITTEN CONTRACT (PROMISSORY NOTE)
### By Plaintiff against Park

129.     Plaintiff incorporates herein by reference each of the allegations set forth in

paragraphs 1 through 128, above.

130.     This cause of action is being pursued to the extent that Park is estopped from

asserting that the so-called "interest" on the promissory note (**Exhibit C**) is usury.

131.     Plaintiff has performed all of his conditions, covenants, and promises under the

promissory note that was executed by Park on August 6, 2018.

FIRST AMENDED COMPLAINT

132.     Park breached the note promising to pay Plaintiff the monthly installments by failing to make all but one partial payment in the end of August in the sum of $100,000.00, and a second payment for the end of October 2018 in the sum of $250,000.00.  No other amount has been paid.

133.     As a result of Park's breach, Plaintiff has been damaged in the sum according to proof at trial, with interest accruing at the legal rate of ten percent (10%) per annum from the initial breach.

134.     In the event that Defendant continues to breach the Agreement, then Plaintiff's total damages will be not less than $2,795,000.00 by July 31, 2019, with interest accruing at the legal rate of ten percent (10%) per annum.

## THIRTEENTH OF ACTION
## DECLARATORY RELIEF
### By Plaintiff against All Named and Does Defendants

135.     Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 134, above.

136.     An actual controversy has arisen and now exists between Plaintiff, Park and KB concerning the legitimacy, validity, and enforceability of Plaintiff's 15% ownership of KB, 2% ownership of JZ, and 15% ownership of Eduhup.

137.     Plaintiff claims that he is a 15% owner of KD, a 2% owner of JZ, and 15% owner of Eduhup as confirmed in the verbal and written communications described above.  Park claims that Plaintiff is not.

138.     Plaintiff desires a judicial determination of the respective rights, duties and obligations of the parties with respect to the aforementioned dispute and requests that this Court issue a declaratory judgment as to the legitimacy, validity, and enforceability of Plaintiff's ownership of KB, JZ, and Eduhup.

FIRST AMENDED COMPLAINT

## FOURTEENTH CAUSE OF ACTION
## COMMON COUNT: MONEY HAD AND RECEIVED
### By Plaintiff against All Named and Does Defendants

139.     Plaintiff incorporates herein by reference each of the allegations set forth in paragraphs 1 through 138, above.

140.     Defendant became indebted to Plaintiff through withholding the sum of $2,795,000.00 from Plaintiff, which was to be paid to Plaintiff pursuant to the parties' agreement.

141.     No part of that amount has been repaid, although payment has been demanded, leaving a balance due, owing and unpaid to Plaintiff in the amount of  $2,795,000.00 plus 5% of each monthly $250,000.00 payment missed.

142.     By July 31, 2019, the sum of $2,795,000.00 with interest accruing at the legal rate of ten percent (10%) per annum will become due and owing.

### PRAYER FOR RELIEF:

WHEREFORE, Plaintiff requests and prays for relief as follows:

1. For special damages for injuries and other monetary relief in a sum according to proof at trial pursuant for all causes of action;

2. For general damages in a sum according to proof at trial for all causes of action;

3. For prejudgment interest thereon at the legal rate of ten percent (10%) per annum;

4. For equitable relief estopping Park from claiming that the interest on the promissory note as attached hereto as **Exhibit "C"** is usurious;

5. For declaratory judgment declaring that Plaintiff is a 15% owner of KB, 2% owner of JZ, and 15% owner of Eduhup;

6. For all statutory damages allowed under the underlying statutes applicable;

7. For costs of suit incurred herein; and,

8.   For such other and further relief as the court deems proper.


DATED:  April 29, 2019                    Law Offices of Christopher K. Jafari


                                          By: _____
                                          Kiarash Kay Jafari, Esq.
                                          Christopher K. Jafari, Esq.
                                          Attorneys for Plaintiff Luke Choi

# EXHIBIT "A"

Investment, CFO Employment, and Partnership Agreement

This agreement is entered into as of November 21, 2015, by and between K & B Education Group, LLC (EduBoston) ("Company") and Luke Choi, an individual California resident ("Investor", "CFO", "Partner")

1. Company agrees to issue and sell 10 Percent of Company's Class A Shares to Luke Choi, free and clear of any liens, claims, charges and encumbrances whatsoever, and Luke Choi agrees to purchase price of $2,000,000. The payment date for the first $520,000 should be made by November 30th and another $980,000 should be made as soon as Choi's home line of credit is funded within December month or sooner. Luke Choi agrees to put additional $500,000 by September1, 2017 to make it total $2,000,000 for 10 percent of Company.

2. Park and Choi will come up with CFO's role and responsibility together. Luke Choi, as Company CFO, will start full employment on September 1, 2016 at $20,000 per month base salary. Luke Choi will start as Company CFO Consultant on January 1, 2016 at $10,000 per month until August 31, 2016.

3. Luke Choi will manage all of Company's investment portfolio of minimum $2,000,000 per year average starting March 1, 2016. As yearly bonus Luke Choi will get 35 percent of net profit and Keenam Park will get 65 percent of net profit from the Company's investment portfolio.

4. Keenam Park and Luke Choi agrees to invest on any future insurance Company at 30 percent partnership for Luke Choi and 70 percent partnership for Keenam Park.

5. Luke Choi, as Company CFO, have option to buy 1 percent of Company per year at $200,000 for next 5 years with additional 1 percent bonus each year starting December 1, 2016 (1percent as CFO bonus and 1 percent for $200,000 purchase). If Choi does not exercise his option to buy 1 percent of Company each year Choi will only get 1 percent bonus of Company each year for 5 years. Any tax gain is responsibility of each party.

6. Keenam Park agrees to give 2 percentage ownership of JZ Music School (Bachon Jazz Academy) to Luke Choi as CFO bonus.

In witness whereof, the parties hereto have duly executed this Agreement as of the day and year first hereinabove set forth.

COMPANY:

K & B Education Group, LLC (EduBoston)

By_____   Date  11/25/15

Keenam Park, CEO

INVESTOR

By_____   Date  11/23/15

Luke Choi, CFO

# EXHIBIT "B"

**From:** Kason Park <kason@eduboston.com>
**To:** Choi <fullertonlinda@sbcglobal.net>
**Sent:** Friday, August 3, 2018, 5:22:20 PM PDT
**Subject:** Re: Notes Payment Schedule

Hi Luke,

I simplified the promissory note to make it easier for us to understand.
Please review and give me your response.

Thanks

Kason


**California Promissory and Installment Note**


On Fri, Aug 3, 2018 at 6:21 PM, Kason Park <kason@eduboston.com> wrote:
Hi Luke and Linda,

It is unfortunate and disappointing that our investment did not work out
the way we expected. But I am still very optimistic with our new platform that
we will be very successful in a short few years.

In the meantime, I am working on this agreement and I want you to know I have not forgotten.
I feel that some of the conditions on this is something that I cannot accept as it is
and I will have to make a counter-proposal. But I will try to do my best to come up with some
solution to make sure that it serves both of us without feeling unfair.

Thank you for your patience.

Kason

## California Promissory and Installment Note

Luke Choi desires to convert his investment of $1,580,000 made in K & B Education Group, LLC to a personal loan to Keenam Park as of August 3rd of 2018 with the fixed interest in the amount of $1,420,000 making the total owed amount to be $3,000,000. There will be no additional interest during the agreed payment period indicated below except the penalty for a late payment.

Keenam Park agrees with the total amount owed and agrees with the following payment schedule.

1. $250,000 due on the last day of August of 2018
2. $250,000 due on the last day of September of 2018
3. $250,000 due on the last day of October of 2018
4. $250,000 due on the last day of November of 2018
5. $250,000 due on the last day of December of 2018
6. $250,000 due on the last day of January of 2019
7. $250,000 due on the last day of February of 2019
8. $250,000 due on the last day of March of 2019
9. $250,000 due on the last day of April of 2019
10. $250,000 due on the last day of May of 2019
11. $250,000 due on the last day of June of 2019
12. $250,000 due on the last day of July of 2019

In the event any payment is not paid within 10 days of payment due date, Keenam Park shall pay 5% of due amount added to each payment due and unpaid.


By _____ , Keenam Park  Date _____


By _____ , Luke Choi     Date _____

# EXHIBIT "C"

**California Promissory and Installment Note**

Luke Choi desires to convert his investment of $1,580,000 made in K & B Education Group, LLC to a personal loan to Keenam Park as of August 3rd of 2018 with the fixed interest in the amount of $1,420,000 making the total owed amount to be $3,000,000. There will be no additional interest during the agreed payment period indicated below except the penalty for a late payment.

Keenam Park agrees with the total amount owed and agrees with the following payment schedule.

1. $250,000 due on the last day of August of 2018
2. $250,000 due on the last day of September of 2018
3. $250,000 due on the last day of October of 2018
4. $250,000 due on the last day of November of 2018
5. $250,000 due on the last day of December of 2018
6. $250,000 due on the last day of January of 2019
7. $250,000 due on the last day of February of 2019
8. $250,000 due on the last day of March of 2019
9. $250,000 due on the last day of April of 2019
10. $250,000 due on the last day of May of 2019
11. $250,000 due on the last day of June of 2019
12. $250,000 due on the last day of July of 2019

In the event any payment is not paid within 10 days of payment due date, Keenam Park shall pay 5% of due amount added to each payment due and unpaid.

By _____ , Keenam Park  Date _August 5th, 2018_

By _____ , Luke Choi  Date _____

<u>PROOF OF SERVICE AND CERTIFICATION</u>

I am employed in the County of Orange County, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1 Park Plaza, Suite 600 Irvine California, 92614 and my electronic service address is davidho84@gmail.com

☐

On June 7, 2019 I served the foregoing document(s) described as  **AMENDED SUMMONS AND FIRST AMENDED COMPLAINT**   by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Gary A. Nye, Esq.
Roxborough, Pomerance, Nye & Adreani, LLP
5820 Canoga Avenue, Suite 250
Woodland Hills, CA 91367

<u>X</u>      (BY ☒ U.S. MAIL/BY ☐ EXPRESS MAIL) The sealed envelope with postage thereon fully prepaid was placed for collection and mailing following ordinary business practices.  I am aware that on motion of the party served, service is presumed invalid if the postage cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing set forth in this declaration.  I am readily familiar with Chris Jafari's practice for collection and processing of documents for mailing with the United States Postal Service and that the documents are deposited with the United States Postal Service the same day as the day of collection in the ordinary course of business.

(BY FEDERAL EXPRESS OR OTHER OVERNIGHT SERVICE) I deposited the sealed envelope in a box or other facility regularly maintained by the express service carrier or delivered the sealed envelope to an authorized carrier or driver authorized by the express carrier to receive documents.

(BY FACSIMILE TRANSMISSION) at Orange County, California, I served the above-referenced document on the above-stated addressee by facsimile transmission pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was (949) 852-4453. **(**A transmission report was properly issued by the sending facsimile machine, and the transmission was reported as complete and without error.  Copies of the facsimile transmission cover sheet and the transmission report are attached to this proof of service.

(BY PERSONAL DELIVERY) By causing a true copy of the within document(s) to be personally hand-delivered to the office(s) of the addressee(s) set forth above, on the date set forth above.

☐      (BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee.

I hereby certify that the above document was printed on recycled paper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 7, 2019 at Orange County, California.

_____

David Ho